IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  11-cv-00333-WYD

JESSICA N. BAYSINGER,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision denying Plaintiff's claim for disability insurance benefits ["DIB"] and supplemental security income ["SSI"] payments.  For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    <u>INTRODUCTION AND BACKGROUND</u>

On March 21, 2007, Plaintiff filed applications for DIB under Title II of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-33, and for SSI payments under Title XVI of the Act, 42 U.S.C. §§ 1381-1383.  (Transcript ["Tr."] 174-83.)  Plaintiff, born in August 1977, was 28 years old on her alleged onset date.  (*Id.* 174, 179, 236.)  She alleged that she became disabled on October 1, 2005, due to back problems, knee problems, sleep apnea, depression, acid reflux, obesity, post traumatic stress disorder (PTSD), left eye blindness, meningitis, and hemorrhoids.  (*Id.* 174, 179, 206.)  She has an eighth grade

education (*id.* 212), and worked in the relevant past as an inbound call taker and a professional care provider. (*Id.* 207.)

Plaintiff's claim was denied at the initial determination stage (Tr. 145-50). *See* 20 C.F.R. §§ 404.906, 416.1406 (2011). The administrative law judge ["ALJ"] held a hearing on July 14, 2009, on Plaintiff's claim. (Tr. 46-69.) On September 23, 2009, the ALJ issued a decision finding at step five of the sequential evaluation required by law that Plaintiff was not disabled under the Act.

More specifically, the ALJ found at step one that Plaintiff remained insured for DIB through June 30, 2008, and had not engaged in substantial gainful activity since October 1, 2005. (Tr. 36, Findings 1 and 2). At step two, the ALJ determined that Plaintiff's obesity, affective disorder, right knee problems, left eye problems, hemorrhoids, and substance abuse disorder were "severe" impairments. (*Id.*, Finding 3). The ALJ found that Plaintiff's back pain was not a severe impairment. (*Id.* 37.) At step three, the ALJ determined that Plaintiff's impairments, alone or in combination, did not meet or equal a listed impairment. (*Id.* 36, Finding 4).

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"]. He found that Plaintiff retained the RFC to perform light work, limited to occasionally bending, squatting, kneeling, and climbing with no foot/leg controls, no contact with the general public, and no complex tasks (SVP 2, GED 1-2). (Tr. 37, Finding 5.) At step four, the ALJ found that Plaintiff could not perform her past work as a care provider because the demands of the work exceeded Plaintiff's RFC. (*Id.* 43, Finding 6.)

Accordingly, the ALJ proceeded to step five.  A vocational expert ["VE"] opined that a person with the RFC found by the ALJ could perform three occupations:  small products assembler (Dictionary of Occupational Titles ["DOT"], # 706.684-022), laundry worker (DOT # 589.685-038), and housekeeper (DOT # 323.687-018).  (Tr. 67, 44.)  The VE affirmed to the ALJ that these occupations were performed in this region in a manner generally compatible with their description in the DOT.  (*Id*. 67.)  The ALJ stated that the VE's testimony was consistent with the information contained in the DOT and found, based on the testimony of the VE, that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (*Id*. 44.)  Accordingly, he found that Plaintiff was not disabled.  (*Id*. and Finding 11.)

The Appeals Council declined review on December 17, 2010 (Tr. 2-4), and this appeal followed.  This Court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Plaintiff argues that the ALJ did not properly assess the RFC, and the RFC was not supported by substantial evidence.  She also argues that the ALJ failed to properly weigh the medical opinions, including that of treating psychiatrist Dr. Coe.[1]  Finally, it is argued that the ALJ failed to develop the record, and that the housecleaner occupation found by the ALJ exceeded Plaintiff's RFC limitations.  Plaintiff requests an immediate award of benefits.  I address Plaintiff's arguments below.

---

[1]  While the parties refer to the treating psychiatrist as Dr. Coe, the administrative record refers to the psychiatrist as Dr. Cue.  (ECF No. 7-9 at p. 1.)  I am unable to determine from the psychiatrist's signature what the proper spelling of his name is.  (Tr. 515.)  I will use the name "Dr. Coe", with the understanding that this also encompasses any records from Dr. Cue.

II.     ANALYSIS

A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B.     Whether the ALJ Committed Legal Error or Made Findings That Are Not Supported by Substantial Evidence

1.     Whether the ALJ Erred in Regard to the RFC

I first address Plaintiff's argument that the ALJ erred in regard to his RFC finding. RFC is "'a term which describes the range of work activities the claimant can perform despite his impairments.'" *Southard v. Barnhart*, No. 02-7102, 2003 WL 21733145, at

*2 (10th Cir. July 28, 2003) (unpublished) (quotation omitted).[2]  The ALJ must evaluate a claimant's physical and mental RFC for use in steps four and five of the sequential evaluation process, and must make specific findings regarding same.  20 C.F.R. § 416.920(e); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

"In arriving at an RFC, agency rulings require an ALJ to provide a narrative discussion describing how the evidence supports his conclusion."  *Lawton v. Barnhart*, No. 04-1050, 2005 WL 281378, at *10 (10th Cir. Feb. 7, 2005) (unpublished) (citing SSR 96-8p, 1996 WL 374184, at *7).  *Lawton* court further stated that "[t]he ALJ must

> discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

*Id*. (quoting *id*. at *7).  The ALJ must also explain how any material inconsistencies or ambiguities in the record were considered and resolved.  *Id*. Further, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  *Id.*  "A function-by-function evaluation is necessary in order to arrive at an accurate RFC."  *Id*. (quoting *id*. at *3-4).

In developing the RFC, the ALJ must consider the limiting effects of all the claimant's impairments.  20 C.F.R. § 416.945; *see also Bowman*, 511 F.3d at 1272-73.  In doing so, the ALJ "'must address both the remaining exertional and nonexertional

---

[2]  I cite this and the other unpublished opinions in this Order because the cases have persuasive value with respect to material issues in the case.  10th Cir. R. 32.1(A).

capacities of the individual." *Southard*, 2003 WL 21733145, at *3.  "The ALJ's findings

must . . .be specific because the hypothetical questions submitted to the VE must state

the claimant's impairments 'with precision.'" *Armer v. Apfel*, Nos. 99-7128, 98-CV-424,

2000 WL 743680, at *2 (June 9, 2000) (unpublished) (quotation omitted).

    I find several errors with the ALJ's RFC assessment.  First, the ALJ did not

conduct a function-by-function assessment of Plaintiff's impairments or address the

maximum amount of each work-related activity Plaintiff could perform.  SSR 96-8p

"requires separate consideration 'of seven strength demands: i.e., sitting, standing,

walking, lifting, carrying, pushing, and pulling.'" *Alexander v. Barnhart*, No. 02-5046,

2003 WL 22087496, at *28 (10th Cir. Sep. 2, 2003) (unpublished) (quoting SSR 96-8p,

1996 WL 374184, at *5.)  In *Alexander*, the Tenth Circuit found that the ALJ erred by

finding that the claimant's impairments limited her to light level work without first

performing the function by function assessment, since ""'at step 4 of the sequential

evaluation process, the RFC must not be expressed initially in terms of the exertional

categories.'" *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *3).  The ALJ in this case

committed the same error.

    Related to this, I also find that the ALJ erred by "describing how the evidence

supports *each* conclusion [in the RFC[, citing *specific* medical facts ... and nonmedical

evidence.'" SSR 96-8p, 1996 WL 374184, at *7 (emphasis added).  While the ALJ

discussed evidence in connection with his RFC (Tr. 37-43), it is unclear what particular

evidence and medical findings he relied on to support each of his findings in the RFC.

Presumably, the ALJ relied on the findings of examining physician Dr. Morrison for the physical RFC and the findings of Dr. Valette and the mental RFC assessment of the state agency provider for the mental RFC physician since he stated that he gave significant weight to their opinions.  (39, 43.)  However, the ALJ erred by accepting only some of the limitations found by these medical providers and providing no explanation as to why he ignored their other opinions.

For example, as to Plaintiff's physical RFC, the ALJ stated that he gave significant weight to Dr. Stephen Morrison's assessment from his consultative examination of Plaintiff on May 24, 2007.  (Tr. 39, 365-69.)  Indeed, the ALJ's physical RFC limiting Plaintiff to light work appeared consistent with Dr. Morrison's findings as to Plaintiff's ability for lifting/carrying and sitting/standing, and the RFC included the same postural limitations found by Dr. Morrison.  (*Id.* 369).  However, the ALJ ignored other medical findings of Dr. Morrison without explanation.  This includes Dr. Morrison's finding that Plaintiff needed frequent position changes and that she has "a relevant visual limitation in that she is legally blind in the left eye . . . and she would need further evaluation of her vision in the left eye."  (*Id.* 369.)[3]

The selective application of Dr. Morrison's findings without explanation is error. The ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'"  *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir.

---

[3]  I also note as to the physical RFC that Dr. Morrison did not reference a limitation to use of foot/leg controls, and it is unclear from the evidence how the ALJ assessed this limitation.

2004)).  If the ALJ's RFC finding conflicts with an opinion from a medical source, the

ALJ must explain why the opinion was not adopted.  Thus, the ALJ must explain any

difference between the ALJ's RFC finding and the physician's opinion, including why his

RFC finding adopted only some but not all of the physician's restrictions.  *See Haga v.*

*Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007); *Winfrey v. Chater*, 92 F.3d 1017,

1024 (10th Cir. 1996).  The failure to do so requires a remand "so that the ALJ can

explain the evidentiary basis for his RFC determination."  *Haga*, 482 F.3d at 1208; *see*

*also Fuller v. Astrue*, No. 10-2037-JWL, 2011 WL 209527, at *17 (10th Cir. Jan. 21,

2011) (unpublished).[4]

     The ALJ's selective application of the evidence is even more apparent in regard

to the mental RFC.  The ALJ stated that he gave substantial weight to the findings of the

state-agency provider, psychiatrist Dr. Ziomek, who completed a Mental RFC

Assessment of Plaintiff.  (Tr. 449-52.)  Dr. Ziomek opined that Plaintiff experienced

marked limitations in the ability to interact appropriately with the public and moderate

limitations in the following:  the ability to maintain attention and concentration for

extended periods, the ability to work in coordination with or proximity to others without

being distracted by them, the ability to complete a normal workday and workweek

without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length or rest periods, the ability

to accept instructions and respond appropriately to criticism from supervisors, the ability

---

[4]  I also find that the ALJ failed to fully develop the record as to the issue of Plaintiff's left eye blindness opined to by Dr. Morrison.  That issue is discussed in Section II.B.3, *infra*.

to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, the ability to respond appropriately to changes in the work setting, the ability to travel in unfamiliar places or use public transportation, the ability to understand and remember detailed instructions, and the ability to carry out detailed instructions.  (*Id*. 449-450.)  She also opined that Plaintiff cannot work closely with supervisors or coworkers.  (*Id*. 451.)

Although the ALJ stated that he gave "significant weight" to Dr. Ziomek's assessment, the ALJ failed to discuss the moderate limitations and Plaintiff's inability to work closely with supervisors or coworkers in his decision or include these limitations in the RFC.  (Tr. 37, 43.)  Instead, as to mental RFC, he only limited Plaintiff to "no dealing with the general public" and no complex tasks.  (*Id*. 37, Finding 5.)  The ALJ also provided no reasons for the omission of these limitations.  Again, I find that this is error.  *See Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (the ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by Dr. Garnand, a nonexamining physician, but rejecting others without discussion.").  The Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all, and that moderate impairments must be addressed by the ALJ in connection with the RFC.  *Haga,* 482 F.3d at 1208; *see also Confere v. Astrue*, No. 06-4217, 2007 WL 1196520, at *3 (10th Cir. April 24, 2007) (unpublished).

Indeed, the Social Security Administration itself has recognized that a moderate impairment means that the individual's capacity to perform the activity is impaired.  POMS 24510.063, http://policy.ssa.gov/poms.nsf/lnx/0424510063.  Consistent with this,

the Tenth Circuit has noted that moderate impairments may decrease a claimant's

ability to perform work. *Bowers v. Astrue*, No. 07-5114, 2008 WL 794853, at *3 (10th

Cir. March 26, 2008) (unpublished). *Bowers* took "particular note" of the moderate

impairment of "responding appropriately to changes in a routine work setting", which it

found to be "a general requirement for unskilled work." *Id.* I find that the failure to

consider these impairments in assessing the mental RFC is particularly egregious in this

case because the VE testified that Plaintiff would be disabled if these moderate

limitations were included in the RFC. (Tr. 67-68.)

The Commissioner argues, however, in reliance on the Program Operations

Manual System ["POMS"], that the ALJ did not err in ignoring the moderate impairments

imposed by Dr. Ziomek because those impairments were not in the section of the RFC

form that addresses the actual RFC. The POMS are "a set of policies issued by the

[Social Security] Administration to be used in processing claims." *McNamar v. Apfel*,

172 F.3d 764, 766 (10th Cir. 1999). Although the POMS is not legally binding, the

Tenth Circuit has held that the court should defer to the POMS provisions unless it

determines they are arbitrary, capricious, or contrary to law. *Id.*; *see also Ramey v.

Reinertson*, 628 F.3d 955, 964 n. 2 (10th Cir. 2001).

In this case, the Commissioner relies on the section of the POMS that explains

how the Social Security Administration ["SSA"] intends the mental RFC form to be used

by the medical consultant for the Agency. The POMS provides that the "summary

conclusions" in Section I of the mental RFC form is "merely a worksheet to aid in

deciding the presence and degree of functional limitations and the adequacy of

documentation and does not constitute the RFC assessment."  POMS DI 24510.060B.2, http://policy.ssa.gov/poms.nsf/lnx/0424510060.  Section I is where the moderate limitations are listed and checked off by the medical consultant.  This is where the moderate limitations found by Dr. Ziomek are noted.  Section III of the form is, according to the POMS, where the state agency consultant records the actual mental RFC assessment.  POMS DI 24510.060B.4.  *Id.*  In Section III, the medical consultant is required to explain the section I "summary conclusions" in terms of the extent to which mental capacities or functions could or could not be performed in work settings.  *Id.*  The Commissioner argues that since the ALJ's findings are not inconsistent with the Section III findings in this case, the mental RFC assessment was not erroneous.

I reject this argument.  First, the ALJ did not even include in the RFC all the limitations in Section III of the form which he acknowledged is Dr. Ziomek's actual RFC assessment.  The limitations not included by the ALJ are that Plaintiff "cannot work closely with supervisors or coworkers" and "can accept supervision and relate to coworkers if contact is not frequent or prolonged."  The ALJ also did not discuss or explain why he did not include those limitations in the RFC.  This alone is error.

Second, as to the argument that the ALJ is not required to consider the impairments found in Section I per the POMS, I find that portion of the POMS is contrary to Tenth Circuit law at least in the situation where, as here, the findings in Section III of the form do not adequately take into account those impairments.  Judge Blackburn of this Court addressed this same argument recently and found that the POMS ruling at issue is contrary to the ruling in *Haga v. Astrue*, "which requires ALJs to address all the

moderate limitations assessed by a consultative medical examiner." *McLeran v. Astrue*, No, 2010 WL 4318579, at *6 (D. Colo. Oct. 25, 2010). I agree with and adopt the holding in *McLaren*. This finding is also consistent with other Tenth Circuit law, as discussed previously, which holds that the failure to address moderate limitations assessed by a medical provider when determining RFC is reversible error.

As noted above, however, my conclusion would likely be different if the findings in Section III of the RFC form encapsulated the limitations noted in Section I. In that situation, the POMS section at issue would appear to be consistent with, not contrary to, the law that moderate impairments be considered by the ALJ in assessing RFC. This is supported by the case of *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *3 (D. Colo. Jan. 12, 2011) (unpublished). In that case, Judge Blackburn found no reversible error where the ALJ failed to mention moderate limitations noted in section I of a RFC assessment but there was "nothing in the record to suggest that th[e] assessment of plaintiff's abilities [in section III] does not encapsulate whatever interruptions might be caused by plaintiff's psychologically based symptoms" as found in section I.

Here, however, Section III of Dr. Ziomek's report in this case does not discuss or appear to encompass many of the moderate limitations that she found in Section I. This includes, but is not necessarily limited to, the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods; the

ability to respond appropriately to changes in the work setting; and the ability to travel in unfamiliar places or use public transportation.

I further note that the state agency provider's failure to include the moderate limitations in section III or at least to ensure that they are represented in some manner in that section is, in fact, contrary to the POMS.  The POMS requires the state medical consultant prepare in section III a narrative statement for each of the subsections in Sections I and II.  POMS 24510.065, http://policy.ssa.gov/poms.nsf/lnx/0424510065.  In doing so, the consultant is required to address each of the four mental categories (Understanding and Memory, Concentration and Persistence, Social Interaction, and Adaptation) and provide a narrative discussion of the individual's capacities and limitations as to same.  *Id.*  Examples given in the POMS as to this requirement are very specific:  "The claimant can understand, remember, and carry out a two-step command involving simple instructions"; "The claimant can understand complex instructions but only recall at a span of two-step commands. . . ." (*Id.*)

Accordingly, not only was the ALJ's RFC in purported reliance on Section III of the mental RFC at issue contrary to established Tenth Circuit law because it did not include the moderate impairments, it also was not supported by substantial evidence as Section III of Dr. Ziomek's mental RFC assessment did not comport with the requirements of the POMS.

I now turn to the opinion of consultative examiner Dr. Valette that the ALJ also stated he gave "significant weight" to in connection with the mental RFC.  (Tr. 39.) Dr. Valette's findings regarding Plaintiff's mental impairments were significantly different

than the RFC assessed by the ALJ and also differ in ways from Dr. Ziomek's RFC

assessment that the ALJ gave "significant weight" to.  Further, the opinions of

Drs. Valette and Ziomek differ in ways from treating physician Dr. Coe's mental RFC

assessment that the ALJ discussed briefly.  (*Id.* 40.)  However, the ALJ erred by failing

to account for these differences or explain how any material inconsistencies or

ambiguities were resolved, as required by SSR 96-8p.[5]

The Commissioner argues, however, that the only acceptable medical source

that provided a medical opinion was Dr. Ziomek, as her mental RFC evaluation was the

only one that included a legitimate RFC finding.  I reject this argument, as this was not a

reason given by the ALJ in his decision.  *See Robinson v. Barnhart*, 366 F.3d 1078,

1084 (10th Cir. 2004) (an ALJ's decision must be evaluated "based solely on the

reasons given stated in the decision").  Indeed, the ALJ relied on several medical

providers' opinions to assess the RFC, as discussed herein, not just Dr. Ziomek's

assessment.  Accordingly, this is an improper post hoc rationale provided by the ALJ.

*See Carpenter*, 537 F.3d at 1267) (a "post hoc rationale is improper because it usurps

---

[5]  For example, the ALJ stated Dr. Valette's GAF score indicated the Plaintiff had only mild symptoms or mild difficulty in social or occupational functioning.  (Tr. 39, 438.)  In contrast, Dr. Ziomek opined as to many moderate limitations as well as marked limitations in dealing with the general public.  (R 449-50, 463.)  Further, Dr. Valette diagnosed only polysubstance abuse and obesity whereas Dr. Ziomek diagnosed depression, anxiety, PTSD and polysubstance abuse.  Dr. Coe's Mental RFC Assessment, discussed in the next section, included moderate limitations in eight categories as compared to Dr. Valette's findings of no more than mild limitations.  Out of the twenty categories cited in the mental RFC assessments completed by Drs. Coe and Ziomek, the two experts reached the same opinion in several categories.  (Compare Tr. 513-15 to Tr. 449-51.)  Dr. Ziomek opined to more severe limitations than Dr. Coe in other categories.  Finally, the ALJ's RFC limited Plaintiff to "no dealing with the general public and no complex tasks" (*id.* 37), even though Dr. Valette opined as to only mild limitations.  The RFC clearly provided more severe limitations than Dr. Valette opined to, but the ALJ failed to discuss this or the other discrepancies noted herein.

the agency's function of weighing and balancing the evidence in the first instance . . .
Judicial review is limited to the reasons stated in the ALJ's decision").

I also reject the argument that Dr. Ziomek's opinion is the only legitimate RFC
finding on the merits.  Dr. Coe, the treating psychiatrist, completed a mental RFC
assessment that was entitled to controlling weight or deference, as discussed in the
next section.  The other medical providers relied on by the ALJ also made medical
findings, i.e., statements about a claimant's condition or impairments, that had to be
taken into account by the ALJ.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.
1994).  An ALJ errs in rejecting medical findings in the absence of conflicting evidence
(*id.*), regardless of whether the findings are made in an RFC assessment.  Further, the
very purpose of a consultative examination, such as the one conducted by Dr. Valette,
is to provide material assistance to the ALJ in resolving the issue of disability.  *Hawkins
v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).  It would be absurd and, indeed,
erroneous for the ALJ to ignore it in assessing Plaintiff's impairments and limitations for
purposes of the RFC simply because it does not contain an actual RFC assessment.

Based on the foregoing errors, I find that this case must be remanded for a
proper assessment of Plaintiff's RFC.  On remand, the ALJ must consider the limitations
imposed by all of Plaintiff's impairments.  He must also consider all of the imitations
opined to by the medical experts and provide valid reasons if he rejects any of those
limitations.  "Although the ALJ need not discuss all of the evidence in the record, he
may not ignore evidence that does not support his decision, especially when that
evidence is 'significantly probative.'"  *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th

Cir. 2001) (quotation omitted).  Finally, the ALJ must provide evidentiary support for each of his RFC findings, including those not specifically addressed herein such as the GED levels.

> 2.    The Weighing of the Medical Evidence

I also find that the ALJ failed to adequately weigh the medical evidence and to assign specific reasons why he chose to give weight to the opinions that he did.  First, the ALJ committed clear error in his failure to weigh treating psychiatrist Dr. Coe's medical opinion in the mental RFC.  Dr. Coe opined that Plaintiff had moderate limitations in eight categories, and stated that "Patient has a lot of anxiety, mood-swings, depression, concentration problems leading to problems organizing."  (Tr. 513-15.)  The ALJ stated as to this opinion:

> A mental residual functional capacity assessment in January 2008 by Barry C[oe], M.D. reflects that the claimant was not significantly limited or at most had moderate limitations of functioning secondary to her anxiety, mood swings, and depression (Exhibit 21F).  This does not support the severity of impairment alleged by the claimant.

(*Id.* 40.)  The ALJ did not acknowledge that Dr. Coe was a treating provider and did not conduct any further assessment of his opinion.

The Tenth Circuit recently stated that its "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded

'controlling weight,' on the matter to which it relates." *Id.* "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* The ALJ did not determine in this case whether Dr. Coe's opinions as a treating provider were entitled to controlling weight.

Further, "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. "If this is not done, a remand is required." *Id. Krauser* cited the relevant ruling, which explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported . . . or is inconsistent with the other substantial evidence in the case record *means only that the opinion is not entitled to 'controlling weight', not that the opinion should be rejected.* Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 1nd 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.*

*Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4) (emphasis added). Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* (emphasis in original).

In *Krauser*, the Tenth Circuit found that the ALJ's assessment of a treating physician's opinion was "patently inadequate for the distinct reason that it ends halfway

through the required two-step analysis:  the ALJ simply concluded that 'Dr. Lambert's

opinion ... cannot be given controlling weight' and then *said no more about it." Id.*

(emphasis in original).  Here, however, the ALJ did not even discuss or consider the first

step—whether Dr. Coe's opinion, in whole or in part, is entitled to controlling weight, let

alone the second step.  Further, he did not consider the relevant factors in determining

what weight to give the opinion and did not state what weight he was assigning Dr.

Coe's opinion.  The Tenth Circuit has made clear that "an ALJ must give good reasons .

. . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific

to make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinions and the reason for that weight.'"  *Robinson*, 366 F.3d

at 1082 (quotation omitted); *see also* SSR 96-2p, 1996 WL 374188, at *5 (1996).

Based on the foregoing, this case also must be remanded for a proper assessment and

weighing of Dr. Coe's opinions.

The Commissioner argues, however, that Dr. Coe's limitations were generally

consistent with Dr. Ziomek's limitations and the ALJ's RFC finding and that he thus did

not reject Dr. Coe's opinions.  Implicit in this argument is that the ALJ adequately

assessed Dr. Coe's opinions. The ALJ's analysis was, however, plainly insufficient to

satisfy the two-step test discussed above.  A similar argument was made and rejected

in *Wade v. Astrue*, No. 07-6154, 2008 WL 193236 (10th Cir. Jan. 23, 2008)

(unpublished).  The Commissioner in that case argued that the ultimate weight assigned

to the opinion of a treating physician was "implicit" where the ALJ's RFC determination

appeared to give the physician's opinion some credence.  *Id.*, 2008 WL 193236, at *3.

The *Wade* court rejected this argument, stating that "the "ALJ herself provided no such analysis." *Id.* Further, as in this case, "the ALJ discussed *none* of the [§ 404.1527(d)] factors and made no [specific] finding as to weight." *Id. Wade* concluded:

> "We cannot simply presume the ALJ applied the correct legal standards in considering [the treating physician's] opinion. We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion."

*Id.* (quotation omitted); *see also Harper v. Astrue*, No. 10-5136, 2011 WL 2580336, at *3 n. 1 (10th Cir. June 30, 2011) (unpublished) (ALJ's statement that he had considered opinion evidence was a conclusory statement that did not satisfy his responsibility to give reasons for the weight he assigned to a treating physician's opinions).

The Commissioner also argues that Dr. Coe did not offer any actual functional limitations aside from a vague limitation that Plaintiff would have "problems organizing". That is allegedly because Dr. Coe did not complete a Section III mental RFC assessment per section DI 24510.060 of the POMS. Thus, the Commissioner contends that the ALJ did not have to consider the moderate limitations found by Dr. Coe. I first find that this argument has no applicability to Dr. Coe since the section of the POMS relied on by the ALJ refers only to mental RFC assessments on a standardized social security form that are prepared by the medical consultants for the agency, not to RFC assessments of a treating physician. *See* POMS, DI 24510.060-065. Even if the POMS was applicable to Dr. Coe's RFC assessment, I reject this argument for the same reasons discussed in Section II.B.1, *supra*.

Further, the ALJ's decision to give opinions of consultative examiners or state examiners "significant weight" was error since the ALJ did not first decide whether to give controlling weight to Dr. Coe's opinions or what other weight his opinions should be assigned. The ALJ also failed to evaluate the relevant factors as to these other medical providers or state why he chose to give those opinions significant weight. This is also error. *See Doyle v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *Hamlin v. Barnhart*, 365 F.3d 1208, 1210 (10th Cir. 2004).

Based upon the foregoing, I find that this case must be remanded so that the ALJ can properly weigh the medical evidence.

### 3.    Whether the ALJ Failed to Fully Develop the Record

Plaintiff also argues that the ALJ did not fully develop the record regarding Plaintiff's left eye blindness and Dr. Morrison's statement that Plaintiff would need further evaluation of her vision in the left eye. I agree.

The ALJ has a duty to fully and fairly develop the record as to material issues." *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)). Consistent with this duty, the ALJ is required to "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC". SSR 96-8p, 1996 WL 374184, at *5. This may require a consultative examination, which should be ordered "when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169.

In the case at hand, the ALJ gave "significant weight" to the opinion of Dr. Morrison.  Consistent with that opinion, the ALJ found that Plaintiff's left eye problems were a severe impairment, meaning that the impairment limited Plaintiff's ability to do basic work activities.  20 C.F.R. §§ 416.920(c); 416.921(a)).  However, the ALJ never undertook any analysis of what actual limitations the left eye blindness might impose, even though the ALJ must address every impairment and the limitations caused by same.  Further, he did not develop the record on that issue, including the ordering of a further evaluation of Plaintiff's eye as recommended by Dr. Morrison.  I find that this was error that also must be addressed and remedied on remand.

The Commissioner argues, however, that there was no duty to develop the record as to Plaintiff's eye problems because the attorney who represented Plaintiff at the hearing did not indicate that additional development was necessary.  This argument is without merit.  When the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue, regardless of whether the claimant is represented by counsel.  *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1263-64 (10th Cir.2005)). Here, the issue of Plaintiff's left eye blindness was apparent from the record, as was the consultative examiner's opinion that a further eye examination was needed.  The ALJ obviously considered the issue of Plaintiff's left eye impairment since he found it was a severe impairment.  Thus, he had a duty to develop the record on this issue.

The Commissioner also argues that the fact the ALJ did not further develop the record with respect to the eye impairments is harmless error.  I do not agree.  Harmless

error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005).  Here, a reasonable factfinder could find from the record if it were fully developed that there are impairments caused by Plaintiff's eye problems that limit her ability to work.  In addition to the issue of depth perception referenced by the Commissioner, Plaintiff could have problems with eye hand coordination, near acuity, far acuity, peripheral vision, general field of vision, and/or the ability to focus and adjust her focus at various distances.  Plaintiff notes that the occupations found by the ALJ required frequent near acuity, frequent depth perception, frequent accommodation, and frequent color vision.  Thus, any limitations caused by Plaintiff's left eye blindness could preclude work that the ALJ relied on in finding that Plaintiff was not disabled at step five.

On remand, the ALJ must develop the file in regards to Plaintiff's left eye impairment and what limitations on work it might impose.  He must also order a consultative eye examination if it could reasonably be expected to be of material assistance in regard to that issue.  Since there was no ophthalmologic examination in evidence, it appears that Plaintiff's specific vision limitations cannot be determined without such an examination.  However, I leave that to the ALJ to decide.

4.   Whether the ALJ Erred at Step Five in Connection with the Housekeeper Position

The VE opined that Plaintiff could perform the occupations of housekeeper, assembly worker and laundry worker.  (Tr. 67)  The ALJ relied on these jobs in finding

that Plaintiff was not disabled at step five.  (*Id.* 44-45.)  For the housekeeper position,

the VE relied on DOT number 323.687-018.  (*Id.* 67.)   The VE testified that this

occupation required only light exertional work, but the DOT provides this is a heavy

occupation.  Since Plaintiff was limited to light work (*id* 37, Finding 5), this occupation

exceeded her RFC.  The ALJ did not discuss this or have the VE resolve the

discrepancy between the DOT and the VE's testimony.  This also was error.  *See*

*Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (an ALJ must inquire about and

resolve any conflicts between a VE's testimony regarding available jobs and the

descriptions of those jobs in the DOT).

The Commissioner asserts, however, that while the housekeeper job found at

DOT 323.687-018 is a heavy job, the DOT also includes a light exertion housekeeping

job whose DOT number is one number different than the heavy housekeeper job.

*Compare* DOT 323.687-018, 1991 WL 672784 *with* DOT 323.687-014, 1991 WL

672783.  He argues that it is possible that the VE misstated the DOT number.  This is a

post hoc argument that is improper.  *Carpenter*, 537 F.3d at 1267.

The Commissioner also asserts that even without the housekeeper position,

there are a significant number of jobs in the national economy that Plaintiff can perform

given the other two occupations that the VE found Plaintiff could do.  This is something

that should be addressed on remand after the ALJ reassesses the medical evidence

and Plaintiff's RFC and resolves any discrepancy between the positions relied on by the

ALJ and the DOT.

5.     <u>Plaintiff's Request for an Award of Benefits Rather than a Remand</u>

Finally, I deny Plaintiff's request for an immediate award of benefits rather than remand.  Reversal and remand for immediate award of benefits is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied."  *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quotations omitted).  In this case, further fact finding is necessary and the case is remanded to the Commissioner on that basis.

III.    <u>CONCLUSION</u>

Based upon the foregoing, I find that the ALJ did not properly assess Plaintiff's RFC and did not properly weigh the medical evidence.  I also find that the ALJ did not fully develop the record as to Plaintiff's left eye blindness and that he erred at step five in accepting the VE's testimony that Plaintiff could perform a job that exceeded her RFC.  Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated March 28, 2012

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge